**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

SEAN MICHAEL S.,

                                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,                No. 5:24-CV-1551
                                                (PJE)
                                        Defendant.

---

**APPEARANCES:**                        **OF COUNSEL:**

Olinsky Law Group                       HOWARD D. OLINSKY, ESQ.
250 South Clinton Street- Suite 210
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration          GEOFFREY M. PETERS, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**PAUL J. EVANGELISTA
U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

Sean Michael S.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and

1383(c)(3) seeking review of a decision by the Commissioner of the Social Security

Administration ("the Commissioner") denying his application for social security income

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, L.R. 72.2(b), L.R. 72.3(b), and General Order 18.  *See* Dkt. No. 5.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

("SSI") benefits. *See* Dkt. No. 1. Plaintiff moved for the Commissioner's decision to be vacated and remanded for further proceedings. *See* Dkt. No. 13. The Commissioner moved for the decision to be affirmed. *See* Dkt. No.14.[3] For the following reasons, plaintiff's cross-motion is granted, the Commissioner's cross-motion is denied, and the Commissioner's decision is reversed and remanded for further proceedings.

## I. **Background**

On July 7, 2022, plaintiff filed a Title XVI application for SSI benefits, alleging a disability onset date of June 25, 2021. *See* T. at 281-87[4] (*See* Dkt. No. 8-5)[5]. On November 3, 2022, the Social Security Administration ("SSA") denied plaintiff's claim. *See id.* at 175-86 (*See* Dkt. No. 8-4). Plaintiff sought reconsideration, which the SSA denied on April 12, 2023. *See id.* at 187-95 (*See* Dkt. No. 8-4). Plaintiff appealed and requested a hearing. *See id*. at 198 (*See* Dkt. No. 8-4). On March 6, 2024, a hearing was held before Administrative Law Judge ("ALJ") Jason Mastrangelo. *See id.* at 36-62 (*See* Dkt. No. 8-2). On March 29, 2024, the ALJ issued an unfavorable decision. *See id.* at 14-35 (*See* Dkt. No. 8-2). On November 20, 2024, the Appeals Council affirmed, and the decision became final. *See id*. at 1-6 (*See* Dkt. No. 8-2). Plaintiff commenced this action on December 19, 2024. *See* Dkt. No. 1.

## II. **Legal Standards**

### A. **Standard of Review**

---

[3] This matter has been treated in accordance with General Order 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[4] "T." followed by a number refers to the pages of the administrative transcript. *See* Dkt. No. 8. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page. Citations to the parties' briefs refer to the pagination generated by the Court's electronic filing program, located at the page headers.

[5] As the voluminous administrative transcript was uploaded to the Court's docket in many separate parts, in addition to the general record citation, the Court includes the specific docket cites for factual citations.

2

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id*. (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotation marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's

position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id*. (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

## B. **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience." *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)). "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* (citing 42 U.S.C. § 423(d)(3)). "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'" *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id*. (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere." *Id*. (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

## III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first noted that plaintiff "has not engaged in substantial gainful activity since April 15, 2022, the application date." T. at 19. (*See* Dkt. No. 8-2). At step two, the ALJ found that plaintiff "has the following severe impairments: diabetes mellitus, neuropathy, and diabetic

retinopathy." *Id*. (*See* Dkt. No. 8-2). At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 21 (*See* Dkt. No. 8-2).

Before reaching step four, the ALJ concluded that through the date of last insured, plaintiff retained the residual functional capacity ("RFC") to "perform light work[6] as defined in 20 CFR 416.967(b) except the claimant should avoid concentrated exposure to hazards, machinery, and heights." *Id*. at 21 (*See* Dkt. No. 8-2). In reaching the RFC determination, the ALJ concluded that

> [e]ven if [plaintiff] was limited to standing and walking 2 hours total in an 8-hour work day, and required the use of a cane for ambulation, the impartial vocational expert at [plaintiff's] [h]earing testified that [plaintiff] could perform work as a call center operator, charge account clerk, and bench worker, of which there are nearly 20,000 total of these jobs in the national economy.

*Id*. (*See* Dkt. No. 8-2). At step four, the ALJ determined that plaintiff "has no past relevant work." *Id*. at 29 (*See* Dkt. No. 8-2). Before reaching step five, the ALJ concluded that the "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work." *Id*. (*See* Dkt. No. 8-2). At step five, the ALJ determined that "considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in

---

[6] 20 C.F.R. §§ 404.1567(b) and 416.967(b) provide that the physical exertion requirements for "light work"

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b); 416.967(b).

significant numbers in the national economy that the claimant can perform." *Id*. (*See* Dkt. No. 8-2).  The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since April 15, 2022, the date the application was filed." *Id*. at 30 (*See* Dkt. No. 8-2).

### IV.  **Discussion**

### A.  **The Parties' Arguments**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence for two reasons.  *See* Dkt. No. 13 at 6-14.  First, plaintiff argues that the ALJ's rejection of his subjective reports of finger and hand limitations is not supported by substantial evidence.  *See id*. at 6-10.  More specifically, plaintiff argues that the ALJ's reliance on grip strength testing "does not suffice to show that [he] had no manipulative limitation[s] over the course of a regular work schedule."  *Id*. at 9 (citing SSR 96-8p, 1996 WL 374184, at *1).  Plaintiff claims that the ALJ did not consider any treatment he received for his upper extremities, and, although the ALJ noted his activities of daily living ("ADL"), the ALJ did not discuss or provide meaningful analysis of his ADL in the context of his manipulative limitations.  *See id*. 9-10.  Plaintiff also contends that the jobs the ALJ provided at Step Five all "required frequent handling."  *Id*. at 10.

Second, plaintiff argues that the ALJ's conclusions regarding Dr. Lorensen and Dr. Figueroa's opinions are not supported by substantial evidence.  *See id*. at 10-14.  Plaintiff asserts that the ALJ mischaracterized Dr. Lorensen's opinion and did not explain which evidence was consistent with Dr. Lorensen and Dr. Figueroa's opinions.  *See id*. at 12-14.  Plaintiff also asserts that Dr. Figueroa did not explain the findings that supported her opinion.  *See id*. at 13.

7

The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.  *See* Dkt. No. 14 at 8-18.  The Commissioner argues that, prior to October 2022, plaintiff's examination reports indicate that he suffered from numbness, neuropathy, and limitations in his feet; not in his hands or upper extremities.  *See id*. at 7-8.  The Commissioner states that, although plaintiff complained to Dr. Lorensen and Dr. Figueroa of difficulty using his arms and hands, Dr. Lorensen found that plaintiff "had intact hand and finger dexterity, 5/5 grip strength, and no trouble using either hand to zip, button, or tie a bow," as well as no limitations using his hands or arms.  *Id*. at 8 (citing T. at 23, 576).  The Commissioner notes that "Dr. Figueroa's examination showed Plaintiff had some trouble with abduction of the left finger and thumb along with 'clumsy' use of the left hand for zippering and buttoning[,]" but the Commissioner argues that "the exam also showed Plaintiff had a full range of motion in the fingers and 5/5 grip strength bilaterally along with easy right finger to right thumb abduction and smooth use of the right hand for zippering and buttoning."  *Id*. at 8 (citing T. at 24, 702).  Similarly, the Commissioner notes that the ALJ considered plaintiff's "wide-ranging" ADL and the prior administrative medical findings ("PAMFs") of record.  *Id*. at 9-10.  The Commissioner also claims that plaintiff's arguments as to the ALJ's rejection of his subjective complaints amount to a disagreement with the weight of the evidence.  *See id*. at 12.

As to Dr. Lorensen and Dr. Figueroa's opinions, the Commissioner argues that the ALJ properly determined that (1) Dr. Lorensen's opinion was supported by her examination of plaintiff and plaintiff's reported medical history, *see id*. at 14-15 (citing T. at 754); (2) Dr. Lorensen's opinion was consistent with the other medical examinations of record and plaintiff's ability to perform ADL, *id*. at 15-16 (citing T. at 383, 398, 406, 453,

469, 472, 479, 535-36, 575, 587, 700-01, 761-62, 909-10); (3) Dr. Figueroa's opinion was supported by her examination of plaintiff, *see id*. at 17; and (4) "Dr. Figueroa's opinion of severe limitations in walking and standing were 'not consistent with the other evidence of record that indicated only modest findings.'" *Id*. at 17.

### C. **Medical Opinions**

Under the current standard, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a) (internal citation omitted). Rather medical opinions and PAMFs are evaluated based on their "persuasiveness." *Id.* In evaluating the "persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." *Id.* §§ 416.920c(a); 416.920c(c)(1)-(5). "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'" *Brian K. v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2, 2025) (quoting 20 C.F.R. § 416.920c(b)(2); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" analysis, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or

[PAMFs] will be." 20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M. v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'"). With regard to the "consistency" analysis, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

"ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted." *Brian K.*, 2025 WL 18718, at *4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448)) (internal quotation marks omitted). "However, they must articulate how persuasive they found the medical opinions and PAMFs." *Id*. (citing 20 C.F.R. § 416.920c(b)). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'" *Id*. (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y.

Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021 WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.").

### 1. **Dr. Lorensen**

Dr. Lorensen is a state consultative medical examiner who examined plaintiff on October 28, 2022.  *See* T. at 574-77 (*See* Dkt. No. 8-7).  During his examination, plaintiff reported that he suffered from diabetes, diabetic neuropathy, and a stroke in 1992 that left "the left side of his body . . . paralyzed as a consequence."  *Id*. at 574 (*See* Dkt. No. 8-7).[7]  Dr. Lorensen's examination of the plaintiff revealed the following.  Under fine motor activity of the hands, "Hand and finger dexterity intact.  Grip strength 5/5 bilaterally.  The right hand could zip and button without a problem.  The left hand could zip and button without a problem.  Both hands could tie a bow together without a problem."  *Id*. at 576 (*See* Dkt. No. 8-7).  For plaintiff's upper extremities, "Strength 5/5 in proximal and distal muscles.  [Deep tendon reflexes ("DTRs")] physiological and equal.  Muscle tone normal.  Finger-to-nose testing normal.  Rapid alternating movements normal on the right.  Mild abnormality noted on the left.  No tremors.  No muscle atrophy."  *Id*. at 576 (*See* Dkt. No. 8-7).  Dr. Lorensen diagnosed plaintiff with Type 1 diabetes, diabetic neuropathy, and a

---

[7] The Court notes that Dr. Lorensen stated, "As he is talking to me, he is waving his left arm and moving his left leg around."  *Id.*

11

history of stroke.  *See id*. (*See* Dkt. No. 8-7).  Dr. Lorensen opined that plaintiff had "[n]o gross limitations noted for sitting, standing, walking, use of the upper extremities, or use of the hands."  *Id*. at 577.

The ALJ concluded that Dr. Lorensen's opinion was persuasive.  *See* T. at 26 (*See* Dkt. No. 8-2).  The ALJ explained that Dr. Lorensen's opinion was "supported by examination findings and personal observation.  Dr. Lorensen was able to review the claimant's medical history and observe and exam [sic] the claimant.  Based on this, the doctor found only mild limitations.  This is consistent with the other evidence of record that shows only modest findings."  *Id*. (*See* Dkt. No. 8-2).  The ALJ also found that plaintiff "indicated an ability to perform various ADLs."  *Id*. (citing T. at 699-703) (*See* Dkt. Nos. 8-2, 8-7).

The Court concludes that the ALJ's treatment of Dr. Lorensen's opinion, as to plaintiff's hand and finger limitations, is not supported by substantial evidence for several reasons.  *See* 20 C.F.R. § 416.920c(c)(1)-(2).  First, the ALJ's conclusion that Dr. Lorensen "found only mild limitations" is unsupported by the ALJ's decision itself.  T. at 26 (*See* Dkt. No. 8-2); *see* 20 C.F.R. § 416.920c(c)(1).  It is unclear how the ALJ concluded Dr. Lorensen "found only mild limitations" when earlier in the same paragraph, the ALJ noted that Dr. Lorensen opined "[n]o gross limitations noted for sitting, standing, walking, use of the upper extremities, or use of the hand."  *Id*. (*See* Dkt. No. 8-2).  Since the ALJ does not define "mild" or "gross" or explain the criteria for determining the severity of each in the context of the plaintiff's hand and finger limitations, judicial review is frustrated because the Court cannot determine what standard the ALJ is applying to Dr. Lorensen's opinion regarding the plaintiff's limitations.  *See Powell v. Astrue*, No. 3:09-CV-1082 (FJS),

2010 WL 4004935, at *5 (N.D.N.Y. Aug. 13, 2010), *report and recommendation adopted,* No. 3:09-CV-1082 (FJS/GHL), 2010 WL 3999258 (N.D.N.Y. Oct. 12, 2010) (remanding where the ALJ failed to define the term "simple tasks").

Second, the ALJ concluded that Dr. Lorensen's opinion "is consistent with the other evidence of record that shows only modest findings."  T. at 26 (*See* Dkt. No. 8-2).  Yet, the ALJ does not define "modest findings" or identify the evidence that established "modest findings" concerning plaintiff's hand and finger limitations.  *See id*. at 21-28 (*See* Dkt. No. 8-2).  The ALJ's decision notes that plaintiff (1) reported to Dr. Freeman in November 2023 that he suffered from "hand pain that was ongoing for the prior few months" and "[h]is pain was the worst in his knuckles and PIP joints and lasted for more than an hour in the morning,"  and (2) complained of numbness in his left hand in December 2023.  T. at 25 (*See* Dkt. No. 8-2).  However, the ALJ does not discuss how these symptoms translate into hand or finger limitations or explain how this evidence is consistent with Dr. Lorensen's opinion of "modest findings".  T. at 26 (*See* Dkt. No. 8-2). Similarly, elsewhere in the hearing decision, the ALJ listed the results of Dr. Figueroa's consultative examination report, but rejected the part of Dr. Figueroa's opinion indicating that plaintiff had "severe limitations in several areas of function," including hand and finger limitations, because this part of Dr. Figueroa's opinion was "not consistent with the other evidence of record that indicated only modest findings."  T. at 24, 27 (*See* Dkt. No. 8-2). It is unclear from the decision what evidence is consistent with Dr. Lorensen's opinion that plaintiff suffered from modest hand and finger limitations.  *See* 20 C.F.R. § 416.920c(c)(2).

Third, it is unclear how the ALJ's statement that plaintiff "indicated an ability to perform various ADLs" supports Dr. Lorensen's opinion or is indicative of plaintiff's ability

13

to perform light work.  T. at 26 (citing T. at 699-703) (*See* Dkt. Nos. 8-2, 8-7); *see* 20 C.F.R. § 416.920c(c)(1)-(2).  Plaintiff reported to Dr. Lorensen that he (1) "cooks two to three times per week"; (2) "shops twice per month"; (3) "showers and dresses daily"; (4) "watches TV"; and (5) "does online social media activities and socializes."  T. at 575 (*See* Dkt. No. 8-7).  In support of this statement, the ALJ cites Dr. Figueroa's consultative examination report.  *See* T. at 26 (citing T. at 699-702) (*See* Dkt. Nos. 8-2, 8-7).  As noted, plaintiff reported to Dr. Figueroa that he "cooks two to three times per week, cleans daily, does laundry once per week, shops once per week, and showers and dresses every day."  T. at 700-01 (*See* Dkt. No. 8-7).  Plaintiff also reported to Dr. Figueroa that he "watches TV, socializes with friends, and plays video games."  *Id*. at 701 (*See* Dkt. No. 8-7).  Yet, Dr. Lorensen and Dr. Figueroa did not opine on plaintiff's ADLs.  *See* T. 574-77, 699-703 (*See* Dkt. No. 8-7).  Plaintiff's claimed ADLs are his subjective reports without any further analysis, and the ALJ does not explain how plaintiff's ADLs support his ability to perform light work or maintain regular employment.  Similarly, the ALJ did not reconcile why he accepted plaintiff's subjective reports of ADLs but rejected plaintiff's subjective reports of his symptomology and limitations.  *Compare* T. at 26, *with* T. at 22 (*See* Dkt. No. 8-2).

"[W]hile an ALJ may properly consider these activities when assessing the intensity and persistence of symptoms . . . the ALJ here appeared to place disproportionate weight on [P]laintiff's activities of daily living, none of which equate to the ability to perform substantial gainful activity."  *Alexandria S. v. Comm'r of Soc. Sec.*, No. 6:22-CV-20 (MAD/DJS), 2023 WL 2863323, at *4 (N.D.N.Y. Feb. 3, 2023), *report and recommendation adopted,* No. 6:22-CV-20 (MAD/DJS), 2023 WL 2583212 (N.D.N.Y. Mar. 21, 2023) (first citing *Tenesha G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1070 (DNH), 2022

WL 35998, at *7 (N.D.N.Y. Jan. 4, 2022); then quoting *David F. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-315 (SALM), 2021 WL 5937670, at *9 (D. Conn. Dec. 16, 2021) (quoting *Berg v. Colvin*, No. 3:14-CV-1042 (SALM), 2016 WL 53823, at *8 (D. Conn. Jan. 5, 2016))) (internal citation and quotation marks omitted); *see also Munoz v. Comm'r of Soc. Sec.*, No. 20-CV-2496 (KAM), 2021 WL 4264814, at *6 (E.D.N.Y. Sept. 20, 2021) (quoting *Bigler v. Comm'r of Soc. Sec.*, No. 19-CV-3568 (AMD), 2020 WL 5819901, at *5 (E.D.N.Y. Sept. 29, 2020) (quoting *Vasquez v. Barnhart*, No. 02-CV-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004))) ("[A] finding that a claimant is capable of undertaking basic activities of daily life cannot stand in for a determination of whether that person is capable of maintaining employment, at least where there is no evidence that the claimant engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.") (internal quotation marks omitted).

The Second Circuit has "stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act." *Alexandria S.*, 2023 WL 2863323, at *4 (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988))); *Moss v. Colvin*, No. 1:13-CV-731 (GHW/MHD), 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014) ("It is well-settled in the Second Circuit that the capacity to care for oneself does not, in itself, contradict a claim of disability as people should not be penalized for enduring the pain of their disability in order to care for themselves.") (internal citation and quotation marks omitted). "There are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job." *Id*. (quoting *David F.*, 2021 WL 5937670, at *9 (quoting *Moss*, 2014 WL 4631884, at *33)). "[A]n ALJ should take into account whether

any evidence of daily activities shows that the claimant engage[d] in any of these activities for sustained periods comparable to those required to hold . . . a job." *Id*. (quoting *Kelly W. v. Kijakazi*, No. 3:20-CV-948 (JCH), 2021 WL 4237190, at *10 (D. Conn. Sept. 17, 2021) (quoting *Balsamo*, 142 F.3d at 81))).  Without any further explanation, it is unclear how plaintiff's subjective reports of his ADL support the ALJ's treatment of Dr. Lorensen's opinion.

As the Court finds reason for remand, it does not reach plaintiff's remaining arguments, which the ALJ may choose  consider on remand.  *See Devra B. B. v. Comm'r of Soc. Sec.*, No. 6:20-CV-643 (BKS), 2021 WL 4168529, at *8 (N.D.N.Y. Sept. 14, 2021) ("Because the Court has determined that remand is required, the Court does not reach Plaintiff's remaining arguments."); *Shields v. Astrue*, No. 11-CV-2088 (FB), 2012 WL 1865505, at *3 (E.D.N.Y. May 22, 2012) ("In light of the decision to remand this case with instructions to consider new evidence on Shields's cardiac condition, it is not necessary to address this argument."); *Mary S. v. Kijakazi*, No. 3:21-CV-1095 (RMS), 2022 WL 4074536, at *17 (D. Conn. Aug. 26, 2022) (quoting *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019) ("[S]ince the 'case must return to the agency either way for the reasons already given . . . the Commissioner will have the opportunity on remand to obviate th[ese] dispute[s] altogether by' addressing the remaining arguments on remand."); *Annunziato v. Berryhill*, No. 3:17-CV-606 (JAM), 2019 WL 156934, at *4 (D. Conn. Jan. 10, 2019) ("The ALJ shall also consider plaintiff's remaining arguments on remand.").

If necessary, on remand, the ALJ should reevaluate the supportability and consistency factors as they apply to Dr. Figueroa's opinion because the ALJ utilizes Dr.

16

Lorensen and Dr. Figueroa's opinions to support his supportability and consistency analysis of each opinion. *See* 20 C.F.R. §§ 416.920c(c)(1)-(2); *Brian K.*, 2025 WL 18718, at *4 (quoting *Rivera*, 2020 WL 8167136, at *14 (quoting *Andrew G.*, 2020 WL 5848776, at *5)).

## V. **Conclusion**

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's cross-motion (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's cross-motion (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's decision is **REVERSED**, and the matter REMANDED for further proceedings; and it is

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision & Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Date:   March 11, 2026
        Albany, New York

_____
Paul J. Evangelista
U.S. Magistrate Judge

17